UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 13-184(DSD/JJK)

United States of America,

    Plaintiff,

v.                                    **ORDER**

Alpha Rashidi Mshihiri,

    Defendant.

    Lola Velazquez-Aguilu, Assistant U.S. Attorney, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, counsel for plaintiff.

    Rick E. Mattox, Esq., Mattox Law Office, 16670 Franklin Trail S.E., Suite 250, Prior Lake, MN 55372, counsel for defendant.

This matter is before the court upon the objection by defendant Alpha Rashidi Mshihiri to the December 20, 2013, report and recommendation of United States Magistrate Judge Jeffrey J. Keyes. Based on a review of the file, record and proceedings herein, and for the following reasons, the court overrules the objection.

**BACKGROUND**

The background of this matter is fully set forth in the report and recommendation, and the court summarizes only those facts necessary to resolve the current objection.

After Mshihiri became a suspect in a mortgage fraud investigation, federal agents applied for search warrants on

Mshihiri's home, laptop computer and storage devices. Mot. Hr'g Tr. 13:11-19; Mot. Hr'g Gov't Exs. 1, 2. Internal Revenue Service Special Agent Jim Shoup submitted an affidavit in support of the warrants, stating that he had interviewed a confidential reliable informant (CRI) on several occasions and the CRI had implicated himself and Mshihiri in fraudulent conduct. See, e.g., Mot. Hr'g Gov't Ex. 1 ¶ 13. Shoup also attested to reviewing loan and real-estate purchase records that indicated that Mshihiri was involved in fraudulent conduct. Id. ¶ 14. Shoup also attested that the CRI had identified another individual, Oluwaleye Oluwatula, who had assisted Mshihiri in fraudulent acts. Id. ¶ 29. Shoup attested to having interviewed Oluwatula, who admitted working with Mshihiri in obtaining fraudulent loans. Id. ¶ 31. The applications for the search warrants were granted, and agents executed the search warrants on Mshihiri's house on June 30, 2010. Id. at Cover Sheet.

On September 16, 2010, Shoup and United States Secret Service Agent Michael Olson interviewed Mshihiri at the Minneapolis-St. Paul International Airport as part of the investigation. Mot. Hf'g Tr. 12:12-17, 13:4-8. Olson and Shoup liaised with Customs and Border Protection (CBP) officers and intercepted Mshihiri after he reentered the United States following an international flight originating in Dar es Salaam, Tanzania. Id. at 15:5-16:9, 48:2-6. CBP officers escorted Mshihiri to a lounge, where Olson testified that he and Shoup met him. Id. at 16:25-17:22. Olson testified

that the agents introduced themselves to Mshihiri, presented their credentials and explained that Mshihiri was not under arrest or obligated to answer questions. Id. at 19:4-18. Olson testified that Mshihiri agreed to speak with the agents and voluntarily accompanied them to an interview room. Id. at 19:18-19. Mshihiri testified, however, that he first encountered the agents when he was already in the interview room. Id. at 49:20-50:9.

Mshihiri was questioned in relation to the fraud investigation. Id. at 21:12-14. Mshihiri testified that, near the beginning of the questioning, a CBP officer opened the door of the interview room, took his phone and told him to cooperate with Olson and Shoup or else his immigration status would be compromised. Id. at 50:24-51:2, 52:16-24. Mshihiri further testified that the CBP officer looked inside the interview room numerous times during the interview. Id. at 58:16-60:5. Olson testified, however, that he had no recollection of a CBP officer entering the interview room or making statements of any kind to Mshihiri during questioning. Id. at 80:16-81:9.

Olson testified that Mshihiri seemed inquisitive and posed questions of his own during the interview. Id. at 21:21-22:13. Olson testified that Mshihiri never requested a break, attempted to stop the questioning or asked to speak with anyone, including his wife or an attorney. Id. at 23:6-13. Mshihiri testified, however, that he asked the agents if he could speak with his wife and inform

her of the delay, and the agents did not allow him to do so. Id. at 50:12-23. Mshihiri testified that he intended to call his wife to instruct her to contact a lawyer. Id. at 51:3-8. Mshihiri then testified that he explicitly informed the agents of his wish to speak with an attorney. Id. at 51:10-11.

The interview - which was not recorded - concluded after forty minutes, at which point Shoup informed Mshihiri that search warrants had been obtained for his person and property and advised him that he was the subject of a target letter from the United States Attorney's Office. Id. at 22:20-25. Olson testified that the he and Shoup executed the search warrant for Mshihiri's laptop and storage devices either just before or after they interviewed him. Id. at 25:23-26:16. Mshihiri was not arrested upon the conclusion of the interview. Id. at 24:2-3.

On December 20, 2013, the magistrate judge recommended that the court deny Mshihiri's motions to suppress (1) statements made during the interview on September 16, 2010, and (2) evidence seized as a result of the search warrants. Mshihiri objects.

## DISCUSSION

The court reviews the report and recommendation of the magistrate judge de novo. 28 U.S.C. § 636(b)(1)(C); Fed. R. Crim. P. 59(b); D. Minn. LR 72.2(b).

4

**I.   Statements to Officers**

Mshihiri moves to suppress statements he made to Olson and Shoup, arguing that (1) the interview was a custodial interrogation and that he was not apprised of his Miranda rights, and (2) the statements he made were involuntary.[1]

   **A.   Miranda Rights**

"Officers must inform suspects of their Miranda rights before subjecting them to custodial interrogations.  Failure to do so results in a violation of the suspect's Fifth Amendment rights and renders any statement gained from the violation inadmissible in the government's case-in-chief."  United States v. Sanchez, 676 F.3d 627, 630 (8th Cir. 2012) (citation omitted).  The government responds that Mshihiri was not in custody during the interview.

In determining whether an interrogation was custodial, the court considers several factors, including:

> (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect

---

[1] Mshihiri also argues that the questioning violated his Sixth Amendment right to counsel and, as a result, his statements should be excluded. Here, however, criminal judicial proceedings had not yet begun against Mshihiri at the time of the interview, meaning the Sixth Amendment right to counsel had not yet attached. See United States v. Ingle, 157 F.3d 1147, 1151 (8th Cir. 1998) ("[N]either custodial interrogation nor a grand jury appearance triggers the Sixth Amendment right to counsel *absent the initiation of formal charges*, even if the target of those investigative actions is represented by counsel." (emphasis added)).

> initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; [and,] (6) whether the suspect was placed under arrest at the termination of the questioning.

United States v. Griffin, 922 F.2d 1343, 1349 (8th Cir. 1990). "The analysis depends upon a review of the totality of the circumstances, and [t]he ultimate test is whether a reasonable person in that position would have felt free to end the interview." Sanchez, 676 F.3d at 630-31 (alteration in original) (citation and internal quotation marks omitted).

Here, the factors weigh in favor of a finding that Mshihiri was not in custody. The agents informed Mshihiri that he was not under arrest. Mot. Hr'g Tr. 20:1-6. Mshihiri entered the interview room voluntarily and was seated closest to the door throughout questioning. Id. at 18:24-19:1. The agents were dressed in casual clothing, rather than law enforcement uniforms, and did not display their weapons. Id. at 14:8-15:4, 20:15-17. The majority of the interview was calm and conversational, excluding the alleged comments[2] by Shoup relating to Mshihiri's wife and children. Id. at 20:10-14, 21:10-11. Mshihiri was at no time handcuffed or physically restrained. Id. at 18:2-4. The

---

[2] Olson testified that Shoup grew frustrated and changed his tone of voice as the questioning neared its conclusion. Id. at 43:14-16. Mshihiri testified, however, that near the beginning of the interview, Shoup told him that his lack of cooperation would negatively impact his wife and children. Id. at 52:6-13.

questioning only lasted for approximately forty minutes, after which Mshihiri was not placed under arrest. Id. at 24:2-3, 31:24-32:1. Finally, the magistrate judge correctly noted that Mshihiri's testimony suggesting a custodial interrogation - namely, his alleged requests to contact his wife and an attorney and comments made by an unnamed CBP officer - was inconsistent and lacked credibility. As a result, the questioning was not custodial, and that portion of the objection based on the lack of a Miranda warning is overruled.

**B.   Voluntariness of Statements**

Mshihiri next argues that his statements to Olson and Shoup should be excluded as being involuntary. "A statement is involuntary when it was extracted by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination." United States v. Vega, 676 F.3d 708, 718 (8th Cir. 2012) (citation and internal quotation marks omitted), cert. denied 133 S. Ct. 261 (2012). The court "consider[s], among other things, the degree of police coercion, the length of the interrogation, its location, its continuity, and the defendant's maturity, education, physical condition, and mental condition." Id. (alteration in original) (citation and internal quotation marks omitted).

As already explained, the interrogation was not lengthy or police-dominated. Although Mshihiri argues that he was tired and

7

sleepy after the international flight, his testimony does not suggest that his will was overborne. See United States v. Gaddy, 532 F.3d 783, 788 (8th Cir. 2008) ("Sleeplessness, alcohol use and drug use are relevant to our analysis, but [i]ntoxication and fatigue do not automatically render a confession involuntary .... [T]he test is whether these mental impairments caused the defendant's will to be overborne." (first alteration in original) (citations and internal quotation marks omitted)). This conclusion is particularly compelling given Mshihiri's own attempts to elicit information from the agents during the interview. Id. at 22:11-13. The court finds that the statements were voluntary. As a result, the magistrate judge correctly found that suppression of the statements is not warranted, and this portion of the objection is overruled.

## II. Search Warrants

Mshihiri argues that the affidavit in support of the search warrants failed to establish probable cause. Specifically, Mshihiri argues that the information provided by the CRI was inadequate to establish probable cause because there was no history of the CRI providing reliable information, nor was the information corroborated by other evidence. The court agrees with the magistrate judge's determination that the warrants were based on probable cause, including probable cause not based on the CRI. For this reason alone, suppression is not warranted.

Even if the warrants were defective, however, the evidence would still be admissible under the good-faith exception to the exclusionary rule. See United States v. Leon, 468 U.S. 897, 920-21 (1984). "Under the Leon good-faith exception, disputed evidence will be admitted if it was objectively reasonable for the officer executing a search warrant to have relied in good faith on the judge's determination that there was probable cause to issue the warrant." United States v. Hager, 710 F.3d 830, 837 (8th Cir. 2013) (citation and internal quotation marks omitted).

> The good-faith exception does not apply in four circumstances: (1) when the issuing judge is misled by information in the affidavit the affiant knows or should know is false; (2) when the issuing judge completely abandons his judicial role; (3) when the affidavit includes so little indicia of probable cause that official belief in its existence is entirely unreasonable; and (4) when the warrant is so facially deficient that the executing officer cannot reasonably presume it to be valid.

United States v. Hessman, 369 F.3d 1016, 1020 (8th Cir. 2004) (citations omitted). Mshihiri cannot demonstrate any of these circumstances. As a result, for this additional reason, suppression is not warranted. Therefore, this portion of the objection is overruled.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendant's objection to the report and recommendation [ECF No. 61] is overruled;

9

    2.    The motion to suppress statements, admissions and answers [ECF No. 28] is denied;

    3.    The motion to suppress evidence obtained as a result of search and seizure [ECF No. 29] is denied; and

    4.    The report and recommendation [ECF No. 60] is adopted in its entirety.

Dated:  January 31, 2014

                                          s/David S. Doty
                                          David S. Doty, Judge
                                          United States District Court